UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:07cv64

| | |
|---|---|
| JOHN A. McALISTER, JR.,<br>　　　　　　　　　　Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| | )　　　　　　　　**ORDER** |
| C. ERIC HUNTER, JOCELYN | ) |
| HUNTER & PHOENIX COLVARD | ) |
| MOUNTAIN, LLC., | ) |
| 　　　　　　　　Defendants. | ) |
| _____ | ) |

　　　　**THIS MATTER** is before the court on the parties' cross-motions for summary judgment.

Plaintiff filed a Motion for Summary Judgment against Defendant Jocelyn Hunter (Document #43),

along with a Brief and an Affidavit in Support (Documents #44-45), on September 2, 2008.  On

September 18, 2008, Defendants' filed Jocelyn Hunter's Reply to Plaintiff's Motion for Summary

Judgment (Document #46), Defendant Jocelyn Hunter's Brief in Opposition to Plaintiff's Motion for

Summary Judgment and Brief in Support of Defendants' Motion for Summary Judgment (Document

#47), and Defendants' Motion for Summary Judgment and Brief in Support (Documents #48-49).

Plaintiff then filed a Reply to Defendants' Response (Document #50) on October 2, 2008.  On

October 17, 2008, Plaintiff also filed a Response in Opposition to Defendant Jocelyn Hunter's Motion

for Summary Judgment (Document #53) and a Response in Opposition to Defendant Eric Hunter's

Motion for Summary Judgment (Document #54).  This matter is now ripe for disposition.

## I. BACKGROUND

　　　　This case stems from the sale of a large tract of mountain real estate ("Property") formerly

owned by Defendant Phoenix Colvard Mountain, LLC ("Phoenix Colvard").  Defendants Jocelyn and

Eric Hunter were the sole owners and member-managers of Defendant Phoenix Colvard. To facilitate the sale of the Property, Defendants hired Sheldon Good and Company ("Sheldon Good"), a national real estate auctioneer, to auction the property and to make other efforts to obtain a buyer. As a result of these efforts, on or about March 3, 2006, Defendants entered into a contract to sell the Property to a third party for $5,962,500. (McAllister Aff. ¶¶3, 24.) The sale closed on July 31, 2006, and Defendants paid Sheldon Good a 6% commission as previously agreed. (McAllister Aff. ¶¶25-26.) In this suit, Plaintiff alleges that due to the sale of the Defendants' Property, he is owed a 3% commission separate from the commission paid to Sheldon Good.

Plaintiff is a South Carolina resident who is licensed to broker real estate transactions in both North and South Carolina. At the time of the relevant events, Sheldon Good was not licensed as a real estate broker in North Carolina. (McAllister Dep. 50.) As a result, Sheldon Good contracted with Plaintiff to serve as Sheldon Good's "broker of record" in this state, and their accord was memorialized in a "Pilot Program Agreement" signed by both parties. Under the terms of the Pilot Agreement, Sheldon Good and Plaintiff agreed to combine their "real estate asset disposition services" to secure clients and entered into a "co-marketing and fee sharing arrangement." In most instances, the primary duties of broker and auctioneer would be performed by Sheldon Good, while Plaintiff would be the "broker of record" and would be responsible for conducting open houses in exchange for a flat fee of $1,500 per property. However, the Pilot Agreement also envisioned greater involvement for Plaintiff in the marketing and sale of some properties, in which case the fee or commission owed to Plaintiff would increase. For his efforts in selling Defendants' Property in this case, Sheldon Good paid Plaintiff the flat fee of $1,500.

A "Standard Exclusive Real Estate Auction Agreement" ("Exclusive Agreement") set forth

the duties of the "Auctioneer" related to the sale of the Property in this case. Among the enumerated duties of the Auctioneer was the obligation to "make an earnest and continued diligent effort to effect a sale of the Property." In addition, a "Description of Agent Duties and Relationships" at the end of the document stated that a "real estate agent" owes his client the duty to "help [the client] obtain the best possible price and terms possible" and must "[a]ct with reasonable skill, care and diligence" in so doing.

The parties to the Exclusive Agreement are named at the beginning of the document under the heading "PARTIES." Only two parties are listed, the "Auctioneer" and the "Seller." The "Auctioneer" is described as "Sheldon Good & Company International, LLC, or it's (sic) affiliate." The "Seller" is designated as "Phoenix Colvard Mountain, LLC." At the end of the document are the signatures of Sheldon Good's Senior Vice-President, of Plaintiff, and of Defendant Eric Hunter as a representative for Phoenix Colvard. The signatures of Sheldon Good's representative and of Plaintiff appear on the left side of the document under the heading "AUCTIONEER." Plaintiff's signature appears on a line with the caption "Broker of Record," and this signature is located underneath the signature of Sheldon Good's Vice-President. Eric Hunter's Signature appears on the right side of the page, under the heading "SELLER." A record of the attachments to the Exclusive Agreement appears beneath the signatures and includes a document titled "List of Auctioneer Team working on this Program/Sale." Plaintiff's name is not included on this "List of Auctioneer Team," which instead contains only the names of Sheldon Good employees.

Early interest in the Property was apparently tepid, and the initial auction was moved from October 17, 2005 to November 15, 2005. (McAllister Aff. ¶16.) To encourage Plaintiff to become more involved in the sale of the property, Defendants discussed "incentivizing" Plaintiff. (McAllister

Dep. 47-48, 61; E. Hunter Dep. 168-69). The upshot of these conversations was the Commission

Agreement at the center of this litigation, which was faxed to the Defendants' residence on November

4, 2005 by Plaintiff. (McAllister Aff. ¶19.) Below a five line heading containing Plaintiff's name,

address, telephone, and fax number, and titled "Commission Agreement," the document states:

> Mr. and Mrs. Eric Hunter . . . agree to pay John A. McAllister, Jr. (*McAllister*) a commission of Three Percent (3%) over and above the previously agreed upon commission with Sheldon Good and Company International, LLC on the total consideration and upon any price, terms, or exchange upon the sale of 477 Versatile Acres located at Phoenix Mountain, North Carolina or additional property agreed upon by option, extension or renewal at closing.

> *McAllister* will make a diligent effort to contact and secure a purchaser through the period negotiated by Sheldon Good and Company International, LLC. The authority of *McAllister* shall terminate at the expiration of the above period, unless renewed by Mr. or Mrs. Hunter.

(italics in original). The agreement was dated November 4, 2005. Defendant Jocelyn Hunter signed

the agreement over a line labeled "Mr. or Mrs. Eric Hunter," and her signature was witnessed by two

other individuals. The agreement was then faxed back to Plaintiff, whose signature also appears on

the document.

Defendant Jocelyn Hunter testified that she did not review the Commission Agreement or

discuss the document with her husband before signing. (J. Hunter Dep. 68, 70, 74.) She further

testified that she did not have an agreement with her husband to sign the document on his behalf when

it arrived (J. Hunter Dep. 71-72.), and this account is corroborated by her husband's testimony (E.

Hunter Dep. 173-75.) According to both Defendants Hunter, their understanding of the agreement

with Plaintiff, based on prior conversations, was that Plaintiff would only receive an additional three

percent commission if he was the procuring cause of the Property's sale. (J. Hunter Dep. 30, 65-66;

E. Hunter Dep. 166). Thus, when the Property was sold to a third party who had not been found by

Plaintiff, the Defendants refused to pay the three percent commission described in the Commission Agreement, and this lawsuit resulted.

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure permits the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Courts, in considering motions for summary judgment, view the facts and inferences in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255; *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In short, summary judgment is appropriate when "the facts and the law will reasonably support only one conclusion." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (quotation omitted).

## III. ANALYSIS

### A. Validity of Commission Agreement

Reserving the issue of consideration for later discussion, the Commission Agreement is in all other respects a valid and enforceable contract. Although Defendants argue that the Commission Agreement is unenforceable because it lacks the real estate license number of Plaintiff, under North Carolina law contracts between a broker and property owner to negotiate the sale of land are not required to be in writing in order to be legally enforceable. Property Shop, Inc. v. Mountain City Inv. Co., 290 S.E.2d 222, 227-28 (N.C. Ct. App. 1982) (citing Thompson-McLean, Inc. v. Campbell, 134

S.E.2d 671, 674-75 (N.C. 1964)). Therefore, Plaintiff's failure to satisfy the administrative requirements established by the North Carolina Real Estate Commission pursuant to the authority of N.C.G.S. 93A-3(c) do not void the contract in this case. Instead, these failures subject Plaintiff to possible discipline by the Real Estate Commission. See Property Shop, 290 S.E.2d at 228; N.C.G.S. 93A-6(a)(15); N.C. ADMIN CODE tit. 21, r. 58A.0104.

Defendants' argument that the Commission Agreement fails because it was not signed by the legal owner of the property, Phoenix Colvard, is similarly unpersuasive. First, even if Defendant Jocelyn Hunter did not sign as a representative of Phoenix Colvard, there is no reason why she could not have entered into a legally enforceable contract with Plaintiff for his help in selling the Property. Although failure to have the actual owner sign the Commission Agreement may run afoul of the rules of the Real Estate Commission, see N.C. ADMIN CODE tit. 21, r. 58A.0104, as with Plaintiff's failure to include his license number, this omission would not void the contract but would only subject the Plaintiff to possible disciplinary action. Second, there is at least some evidence that Jocelyn Hunter, as a member-manager of Phoenix Colvard, signed the Commission Agreement as a representative for the company.

Defendants also assert that the Commission Agreement is invalid because of the preexisting Exclusive Agreement between Defendants and Sheldon Good. When an exclusive right to sell is granted to a broker, the property that is the subject of this agreement cannot be sold during the listing term without paying the listing firm the amount specified in the agreement, regardless of who is the procuring cause of the sale. Weber, Hodges & Godwin Comm. Real Estate Servs., LLC v. Cook, 650 S.E.2d 834, 836 (N.C. Ct. App. 2007); see also Peeler Ins. & Realty, Inc. v. Harmon, 200 S.E.2d 443, 445 (N.C. Ct. App. 1973). As a result, in the present case, Defendants owed the six percent

commission to Sheldon Good if the property was sold by anyone during the period of their Exclusive Agreement.[1]

Thus, the primary purpose of an exclusive listing agreement is to protect the interests of the listing firm. By the terms of the Exclusive Agreement, Sheldon Good was entitled to, and did receive, a six percent commission notwithstanding the Commission Agreement between Defendants and Plaintiff. Although Defendants' Commission Agreement with Plaintiff may or may not have been in breach of Defendants' Exclusive Agreement with Sheldon Good, this does not make the Commission Agreement unenforceable. Defendants cannot use their own bad conduct -- assuming it may be characterized as such -- as a defense against a properly formed contract.

Therefore, the Commission Agreement is enforceable against the Defendants, or at least Jocelyn Hunter, so long as there was legally sufficient consideration.[2]

**B. Consideration for Commission Agreement**

Defendants argue that even if the Commission Agreement was properly formed, this agreement is invalid for lack of consideration. First, Defendants contend that the Exclusive Agreement between Sheldon Good and Defendants for the listing and auctioning of the Property bound Plaintiff by its terms to "make an earnest and continued diligent effort to effect a sale of the

---

[1]This statement assumes that the contract is in all other respects legally enforceable.

[2]To the extent Defendants argue that the Commission Agreement is invalid because it does not contain the true agreement between Defendants and Plaintiffs (i.e., that Plaintiff would only receive the three percent commission if he was the procuring cause of the sale of the Property), this argument must fail. Absent a showing of fraud, which Defendants do not argue in their briefs, a contracting party is presumed to have knowledge of the contents of a written agreement that she has executed. Martin v. Vance, 514 S.E.2d 306, 309-10 (N.C. Ct. App. 1999). If this written agreement is "clear and unambiguous" -- as is the case here -- "the court must interpret the contract as written." Id. at 309.

property." Second, Defendants contend that North Carolina law imposes a duty on Plaintiff to perform diligent efforts as the "broker of record" regardless of any contractually obligated duty. Thus, under the preexisting duty rule, Defendants assert that Plaintiff's promise in the Commission Agreement to "make a diligent effort to contact and secure a purchaser" is insufficient consideration to support Defendants' promise to pay Plaintiff a commission of three percent on the sale of the Property. Lastly, Defendants aver that Plaintiff did not perform the "diligent efforts" that would entitle him to his commission under the Agreement. At present, there exist genuine issues of material fact preventing resolution of each of these arguments.

### 1. The Exclusive Agreement and the Pre-existing Duty Rule

The parties agree that the duties of the Auctioneer under the Exclusive Agreement and the duties of Plaintiff under the Commission Agreement to perform "diligent efforts" to effect the sale of the Property are the same. However, the parties disagree as to whether the Plaintiff owed any duties to Defendants under the Exclusive Agreement. Under North Carolina law, whether two parties have formed a contract

> must be determined . . . from the expressed intention of the parties . . . from a consideration of their words and acts . . . the test of the true interpretation of an offer or acceptance is not what the party making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.

Carolina Power & Light Co. v. Atlantic Forks, L.L.C., 664 S.E.2d 79 (N.C. Ct. App. 2008) (table) (quoting Howell v. Smith, 128 S.E.2d 144, 146 (N.C. 1962)). When parties dispute the existence of a contractual relationship, "[w]hether mutual assent is established and whether a contract was intended between parties are questions for the trier of fact." Chaisson v. Simpson, 673 S.E.2d 149, 156 (N.C. Ct. App. 2009) (citing Snyder v. Freeman, 26 S.E.2d 593, 602 (N.C. 1980)).

8

In the present case, the parties disagree as to whether Plaintiff was a party to the Exclusive Agreement, and they present conflicting evidence in support of their claims. On the one hand, Plaintiff's signature appears on the contract below the heading "Auctioneer" and directly under the signature of the Sheldon Good representative. As a general rule, "[w]hen a party affixes his signature to a contract, he is manifesting his assent to the contract." Moseley v. WAM, Inc., 606 S.E.2d 140, 143 (N.C. Ct. App. 2004) (citation omitted). In addition, the "Auctioneer" that is a party to the Exclusive Agreement is defined as "Sheldon Good & Company International, LLC, or it's (sic) affiliate" (emphasis added), and Defendants assert that they understood Plaintiff to be a party to the contract. (J. Hunter Dep. 30.) On the other hand, a signatory is not always a party to the contract signed, as in the case of a witness or notary. Here, Plaintiff's signature may have been included based solely on the parties' belief that this was necessary to show compliance with the North Carolina real estate licensing laws and without the parties intending that Plaintiff be bound by the Exclusive Agreement. Furthermore, Plaintiff's name was not included in the "List of Auctioneer Team working on this Program/Sale" that was attached to the Exclusive Agreement, and both Plaintiff and the Sheldon Good representatives testified in their depositions that Plaintiff was not bound by the terms of the Exclusive Agreement.[3] (McAllister Dep. 35-38; Kravets Dep. 52). Because the evidence on this issue is conflicting, a genuine issue of material fact exists, making summary judgment inappropriate.

---

[3]However, to the extent this belief was based on the limitations of Plaintiff's duties contained in the Pilot Agreement, this contention would appear unsupportable unless the Defendants were aware of the Pilot Agreement's terms prior to signing the Exclusive Agreement. Although the Pilot Agreement may not have obligated Plaintiff to Sheldon Good to perform "diligent efforts" to sell any properties, this is irrelevant when determining Plaintiff's obligations to Defendants pursuant to the Exclusive Agreement.

## 2. Pre-existing Duties Imposed by North Carolina Law

Defendants further argue that summary judgment is warranted because Plaintiff, as the "Broker of Record," had a duty under North Carolina law to act diligently on behalf of the Defendants to effect a sale of the Property. According to Defendants, this duty applies even if the Exclusive Agreement is not enforceable against Plaintiff. While it is true that North Carolina law imposes duties on real estate brokers for the benefit of their clients, these duties do not apply in this case unless a real estate agent-client relationship was formed between Plaintiff and Defendants. As discussed above, it is unclear at this time whether Plaintiff was a party to the Exclusive Agreement, and so the court cannot say as a matter of law that this agreement created an agent-client relationship between Plaintiff and Defendants.

In addition, the court finds no support for Defendants' contention that North Carolina law imposes fiduciary duties on a "broker of record" in a real estate transaction vis-a-vis the out-of-state brokerage firm's clients. First, this court was unable to find the term "broker of record" in any of the North Carolina statutes and administrative regulations governing real estate agents. Moreover, it appears on the record before the court that the agreement between Sheldon Good and Plaintiff to enter into a "fee-sharing arrangement" is contrary to the North Carolina statute requiring that a real estate license "be obtained from the [North Carolina Real Estate] Commission even if the person . . . or business entity is licensed in another state and is affiliated or otherwise associated with a licensed real estate broker in this State." N.C.G.S. § 93A-1.[4]

---

[4]The purpose of this provision is especially clear in light of the circumstances surrounding its enactment. The provision was adopted the year after a North Carolina appeals court decision declared legal a commission sharing arrangement -- similar to the one in the present case -- between an unlicensed out-of-state real estate agent and a licensed North Carolina real estate broker. See Furr v. Fonville Morrissey Realty, Inc., 503 S.E.2d 401 (N.C. Ct. App. 1998).

Thus, the arrangement in this case is not one that is sanctioned by the North Carolina real estate laws. Consequently, these laws do not address the duties of a "broker of record" under the circumstances of this case. Since North Carolina law does not compel a "broker of record" to perform any specific duties, this court will not impose the standard duties of a real estate agent-client relationship upon the Plaintiff as a matter of law. However, an agent-client relationship may have been created by the conduct of the parties in this case. Such a relationship could arise from the Exclusive Agreement or from other representations and actions of the parties, but the evidence at this time is conflicting. Since material issues of fact exist regarding the nature of the relationship between Plaintiff and Defendants before the signing of the Commission Agreement, summary judgment is inappropriate on this issue.

### 3. Performance of "Diligent Efforts"

The parties also disagree as to whether Plaintiff performed the "diligent efforts" required by the terms of the Commission Agreement. Although Plaintiff contacted multiple people he thought might be interested in the Property, made presentations about the property at national real estate trade conventions, and distributed marketing brochures and flyers concerning the property, the court cannot say as a matter of law that these amounted to diligent efforts. (McAllister Aff. ¶22.) This is especially true since Plaintiff has admitted that he would have attended the national real estate conferences regardless, since the brochures and flyers distributed by Plaintiff were produced by Sheldon Good, since Plaintiff undertook no personal expense during the course of his marketing efforts, and since Defendants assert that Plaintiff's efforts failed to bring any new prospective buyers

11

to the property after the Commission Agreement was signed on November 4, 2005.[5]  (McAllister

Dep. 73-76.)  Under this set of facts, whether Plaintiff performed the "diligent efforts" required by

the Commission Agreement is a question of fact for the jury.  See Baron Financial Corp. v. Natanzon,

509 F. Supp. 2d 501, 516-17 (D. Md. 2007) (holding that whether party put forth "best efforts"

under contract was question of fact for the jury); NCNB Nat'l Bank of North Carolina v. Bridgewater

Steam Power Co., 740 F. Supp. 1140, 1152 (W.D.N.C. 1990) (resolving questions of fact following

a bench trial before determining whether party performed services consistent with "best efforts"

provision in contract).

### C. Parties to the Commission Agreement

Defendants Eric Hunter and Phoenix Colvard claim that summary judgment is appropriate in

their favor for the additional reason that they did not sign the Commission Agreement and thus were

not parties to the Agreement.  Under North Carolina law, if a person "by words or conduct,

represents or permits it to be represented that another is his agent, he will be estopped to deny the

agency as against third persons, who have dealt, on the faith of such representation, with the person

so held out as an agent."  Univ. of North Carolina v. Shoemate, 437 S.E.2d 892, 898 (N.C. Ct. App.

1994).

In the present case, the deposition testimony of Jocelyn Hunter is clear that she did not discuss

the Commission Agreement with her husband before affixing her signature and that she did not have

a preexisting understanding with her husband to sign the Commission Agreement when it was

---

[5]According to Defendants, the only entity Plaintiff was responsible for bringing to the Property, Crescent Resources, had already made arrangements for a site visit by November 2, 2005, two days before the Commission Agreement was signed.  When questioned at his deposition, Plaintiff could not recall any other parties he had brought to the Property, although he did assert that "[t]here were others."  (McAllister Dep. 91-92).

received. (Dep. J. Hunter 65-66, 68, 71-72.) Plaintiff presents no evidence to contradict this testimony. Although Plaintiff may have discussed the Commission Agreement with both Eric and Jocelyn Hunter, this conduct provides no evidence for a reasonable third party to conclude that Jocelyn Hunter had authority to act as Eric Hunter's agent. Plaintiff also points to the face of the document itself as evidence of agency, since the Commission Agreement states that "Mr. and Mrs. Eric Hunter . . . agree to pay . . . a commission." (emphasis added). Although this could create a reasonable inference that Jocelyn Hunter was acting as an agent of her husband in signing the document if the Hunters had drafted the agreement, Plaintiff cannot reasonably rely on the language he placed in the Commission Agreement to denote an agency relationship between the Hunters. As a result, this court finds as a matter of law that no agency relationship existed between Jocelyn and Eric Hunter for the signing of the Commission Agreement. For this reason, Eric Hunter's Motion for Summary Judgment will be granted.

However, Plaintiff has presented enough evidence to survive summary judgment as to Plaintiff's claims against Phoenix Colvard. Jocelyn Hunter, as a member-manager of Phoenix Colvard, may have been acting in a representative capacity when signing the Commission Agreement. The evidence related to this issue is conflicting and has not been sufficiently developed to permit summary judgment, and the issue will be left for the determination of the jury at trial. See Bone Int'l, Inc. v. Brooks, 283 S.E.2d 518, 521 (N.C. 1981) (holding that whether defendant obligated himself as an individual or obligated his corporation was a question of fact for the jury).

## IV. CONCLUSION

In sum, genuine issues of material fact exist as to whether Plaintiff was obligated to perform the duties of the Auctioneer under the Exclusive Agreement, whether Plaintiff and Defendants

developed a real estate-agent client relationship through any other representations or actions of the parties, whether Plaintiff performed the "diligent efforts" required by the Commission Agreement, and whether Jocelyn Hunter signed the Commission Agreement in her individual capacity or as an agent of Phoenix Colvard Mountain, LLC. However, the record is clear that Jocelyn Hunter did not act as an agent for Eric Hunter in signing the Commission Agreement.

**WHEREFORE**, for the foregoing reasons, Plaintiff's Motion for Summary Judgment is **DENIED**, Defendant Jocelyn Hunter's Motion for Summary Judgment is **DENIED**, Defendant Phoenix Colvard Mountain, LLC's Motion for Summary Judgment is **DENIED**, and Defendant Eric Hunter's Motion for Summary Judgment is **GRANTED**.

Because the issues raised by these motions were briefed extensively by the parties, Plaintiff's request for oral argument will also be **DENIED**.

Signed: June 8, 2009

Richard L. Voorhees
United States District Judge